Statement of the Case.
MONROE, J.
Plaintiff brings this suit on a note for $2,525.13, given by defendant for the price of two mules and for advances, made by it (plaintiff) for the purpose of his (defendant’s) crop of 1909, and on an open account for a balance of $1,019.11, due for advances on the crop of 1910. The contract for the advances for the crop of 1909 declares that defendant is the owner of ten mules, and other movable property, “without which this contract would not have been made,” and that said ten mules are specially pledged and pawned the more effectually to secure said advances. Upon the proper allegations, affidavit, and bond, the mules were seized, *949 under a writ of sequestration, and thereafter, defendant making no appearance, there was judgment against him, by default, as prayed for. Mrs. Blackman, defendant’s wife, intervened, however, alleging that she is “the owner of the eight mules described and designated in plaintiff’s petition”; that she acquired them, by purchase, with money inherited from the estate of her mother, and “rented” them to defendant for $200 a year; and that defendant was without authority to pledge or pawn them. Wherefore she prays that she have judgment for said eight mules, and for damages. Mrs. Blackman testifies that her mother died 29 years ago, and that she inherited certain real estate from her; that 19 years ago she was married, and 15 years ago received $3,750 as the proceeds of the real estate inherited from her mother; that she immediately afterwards told her husband to buy mules and make a living, and that she would pay for them, and that it was done; that the mules so purchased were young; that she does not know from whom they were bought, save three, that were bought from her husband’s cousin; that she put the money, in bank to her credit, but has no canceled checks; that she does not know when she entered into the contract whereby she leased the mules to her husband ; that it has been going on about 10 or 12 years; that the rent was paid; that she does not know how; that, if it had been paid in money or check, she would have known it; that it was paid in money; that she does not know what amounts were paid, or when, and that she gave no receipts and kept no account; that her husband “continued to run the business,” and that she never rented any lands or farmed; that the mules seized were not the same that were originally bought, but there had been trading and re-trading, buying and selling.
Mr. Wells, a witness called by intervener, testifies that she (intervener) got'some $2,000 from her mother’s estate and bought two mules, but he does not know whether she owned any mules when she moved (from Rapides) to St. Mary parish; that the two mules were bought three or four years after Mrs. Blackman’s marriage, and that he does not know whether it was she or her husband who bought them. Mr. D. H. Blackman (brother-in-law of intervener) testifies that she (intervener) received between $3,500 and $4,-000 for the property inherited from her mother’s succession; that he thinks she bought stock and farming utensils; that they (she and her husband) took eight mules with them to St. Mary; that “it was always understood that the property belonged to her; the money was used out of the estate to buy the mules with.” The testimony so given was objected to, and on cross-esamination the witness said that he was not present when any stock or utensils were bought and did not know who bought them.
Opinion.
The intervener fails to make out her case. The two witnesses called in her behalf, save, perhaps, that they may have known that she received something from the estate of her mother, testify from hearsay. She herselt says that she told her husband (say, 15 years ago) to buy mules and make a living, and that she would pay for them, but that, since then, there has been buying and selling, trading and retrading (in none of which does she appear to have participated), and that the mules which she now claims are not the mules which were then purchased, and which appear to have been purchased by her husband, in his own name, and used and held out as his own, until they died, perhaps, or were sold, or traded for others, which, in turn, were sold, died, or traded for others. No one from whom mules were bought or to whom mules were sold by the husband has been called to testify that they were bought or sold as the property or for the account of the wife, and the burden, rested upon her to *951 prove that her husband, acting as her agent, bought or otherwise acquired them (i. e., the mules that are here in dispute) in her name and for her account.
“Although we have held” (this court has said) “that the agency of the husband is not incompatible with the wife’s separate administration, yet such agency must be clear and certain, and the administration must be distinctly conducted in her name and for her account.” Trezevant v. Holmes, 38 La. Ann. 146 (syllabus).
“Property purchased with the paraphernal funds of the wife only becomes her separate property while she keeps the administration of her separate estate, and when the title is taken in her own name, either as a purchase with funds which she administers herself, or as a dation en paiement, made to her by the debtor of a separate and paraphernal debt.” Rousse v. Wheeler and Wife, 4 Rob. (La.) 114 (syllabus).
See, also, Dominguez v. Lee et al., 17 La. 300; Hanna v. Pritchard, 6 La. Ann. 734; Succession of Wade, 21 La. Ann. 344; Tally v. Heffner, 29 La. Ann. 583; Succession of Merrick, 35 La. Ann. 296; Succession of Pierce, 119 La. 732, 44 South. 446; McWilliams v. Stair, 128 La. 752, 55 South. 343.
. It is therefore ordered, adjudged, and decreed that the judgment appealed from, in favor of the intervener, be annulled, avoided, and reversed, and that her demands be rejected, at her cost in both courts.